# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MARK HALPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:16-cv-00567 |
| ) | Judge Steeh / Frensley |
| SONY/ATV MUSIC PUBLISHING, LLC, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon a Motion to Dismiss and Incorporated Memorandum of Law filed pursuant to Fed. R. Civ. P. 12(b)(6) by Defendants Sony/ATV Music Publishing LLC, EMI April Music Inc., Gone Gator Music, Universal-Polygram International Tunes, Inc., Sony/ATV Songs LLC, and UMG Recordings, Inc. Docket No. 25. In support of their Motion, Defendants have contemporaneously filed the Declaration of Elizabeth Gonser with attached Exhibit. Docket No. 26.

Plaintiff has filed a Response in Opposition to Defendants' Motion. Docket No. 28.

With leave of Court (Docket No. 31), Defendants have filed a Reply (Docket No. 29-1).

Also with leave of Court (Docket Nos. 40, 43), Plaintiff has filed a Sur-Reply (Docket No. 44).

Plaintiff, pro se, filed this copyright infringement action alleging that "Sam Smith, Capitol Recording artist, used and replicated phraseology and significant phrase 'stay with me' eight (8) times in the body of his mega hit song 'Stay with Me' thereby copying and infringing

upon the original musical production of Plaintiff Mark Halper whose original song 'Don't Throw Our Love Away' written in April 1984 and musically recorded as a demo in a Nashville studio in February 1986 and a second demo musically recorded in 2013 that began in line 1 with the phraseology and significant phrase 'stay with me' and continued in line 2 with the phraseology 'lay with me.'" Docket No. 1, p. 2. Plaintiff argues that Defendants gained access to his work through the production and "wide[]" dissemination of two (2) demos of "Don't Throw Our Love Away" to "some of the most successful music producers and recording artists of that time." *Id.* at 6. Specifically, Plaintiff argues:

> The first demo was produced in 1986 and the second demo was produced in 2013 with two different arrangements and sung by two different female singers. In between, there was also a demo sung by a male singer. The cassette demo of "Don't Throw Our Love Away" was first produced and widely disseminated to some of the most successful music producers of that period (1986) to include Garth Fundis (3/7/86), Don Lanier (3/7/86), Brent Maher (3/7/86), Paul Worley (3/10/86), Rich Alves and Tom Collins (4/8/86), and Brian Rawlings (4/8/86) and also widely disseminated to some of the most successful recording artists and entertainers of that period (1986) to include Lee Greenwood (3/7/86), Don Williams (3/7/86), Reba McEntire (3/7/86), Crystal Gayle (4/9/86), Sylvia (4/9/86), Gary Morris (4/9/86), Barbara Mandrell (4/9/86), Ronnie Milsap (4/10/86), and Dolly Parton (1/8/90). The demo of "Don't Throw Our Love Away" was also sent to Marvin Hamlisch before he died. The third demo was produced and widely disseminated in 2013 to include one of the most successful music producers of that period (2013), Emilio Estefan via referral from a mutual friend Gladys Passes whose name was Julio, and to include one of the most successful recording artists, Gloria Estefan via referral from that same mutual friend of Gladys Passes whose name was Julio.

*Id.*

Plaintiff contends that the "phraseology 'stay with me' has now become readily and instantly recognizable and forever engrained [*sic*] in the hearts, souls, and minds of music lovers

2

around the world." *Id.* Plaintiff asserts that the phraseology 'stay with me' and 'lay with me' first written by him and appearing in his original 1984 song "Don't Throw Our Love Away" and subsequently copyrighted with Certificate of Registration, Registration Number Pau003785645 contains a protectable expression. *Id.* at 8. Plaintiff therefore maintains:

> In this case, we are not talking about substantial similarity. We are talking about the exact and identical phraseology and significant phrase 'stay with me' being used and replicated eight (8) times throughout the song "Stay With Me" and then the exact and identical phraseology 'lay with me' being used as a counterpart in "Stay With Me".
>
> All told, 26% of the song "Stay With Me" represents use of and replication of the phraseology significant phrase of Plaintiff's original song "Don't Throw Our Love Away". Without the court and your Honor granting Plaintiff copyright infringement protection on the phraseology and significant phrase 'stay with me' (at the very least) and realistically to include the counterpart phraseology 'lay with me,' the songwriters Samuel Smith, James Napier, William Phillips and now to include Tom Petty and Jeff Lynne will be in a strong legal position to exert control over and ownership of this phraseology significant phrase. Since "Don't Throw Our Love Away" was never published, without this copyright infringement protection, it is unlikely that any singer or publisher would proceed to record "Don't Throw Our Love Away", thus denying Plaintiff rightfully deserved marketing, retail sales, and promotional value. All recognition and revenue would continue to go directly to Samuel Smith, James Napier, William Phillips, Tom Petty, and Jeff Lynne through Sony/ATV Music Publishing LLC et al to include all the Defendants named in this lawsuit.

*Id.* at 7.

Plaintiff explains:

> There are two (2) key elements most relevant to this case. The first is to understand what has occurred prior to the filing of the copyright infringement claim involving the phraseology contained in the first two lines of "Don't Throw Our Love Away" as

3

previously originally written by Plaintiff, i.e. 'stay with me' and 'lay with me'. The second is to understand in fact that a willful infringement has been perpetuated by Defendant since the initial letter was sent by Plaintiff Mark Halper to Jeff Smaar, VP Global Copyright Administration, SONY ATV SONGS LLC the designated office for Sony/ATV Music Publishing LLC, advising them of a copyright infringement claim, and acknowledged by Jeff Smaar as being received on February 25, 2015. There was then the formal filing of the copyright infringement claim in Federal court. From the very beginning, there has been a refusal and failure by Sony/ATV Music Publishing LLC to communicate with Plaintiff in any meaningful manner. It represents and clearly shows the intent of the Defendants to deny and deprive the Plaintiff of any financial gain and recognition for that which he created while every entity and member associated with Defendants has received significant career and financial benefits and gain.

*Id.* at 8-9.

Plaintiff sues Defendants seeking:

a. Acknowledge contribution with co-songwriting credit for "Stay With Me" to include Plaintiff Mark Halper to be added to Samuel Smith, James Napier, and William Phillips for lyrics while acknowledging that following the out of court settlement as referenced above, Jeff Lynne and Tom Petty have been added to the songwriting credit of "Stay With Me".

b. 28% royalty from the single "Stay With Me" and the CD album "In the Lonely Hour" and the subsequent CD album "In the Lonely Hour" (Drowning Shadows Edition), produced and distributed by Capitol Records and publishing revenue containing the song "Stay With Me" which propelled the CD album to sales in excess of 2 million copies in both the US, the UK as well as many countries internationally with sales and revenue having been received through new technology to include, but not limited to [*sic*] downloading and streaming through Apple, YouTube, Amazon, iTunes, and Spotify as well as the previously considered four principle sources of revenue for compositions which include mechanical royalties, performance royalties, sale of sheet music & folios, and profits of record label(2) [*sic*].

c. 28% financial compensation from the financial arrangement and

compensation paid for use of the excerpt of the song "Stay With Me" with Sam Smith singing the phraseology and significant phrase "stay with me" for a commercial promo for the Universal mini-series production of AD - The Bible Continues which began airing 3/30/15 during the episode of The Voice for the program set to begin airing Easter Sunday, 4/5/15 on NBC.

d. 28% financial compensation from the financial arrangement and compensation paid for use of the promo transition following a competitor's performance (Alex Boye) from America's Got Talent which aired 6/23/15.

e. Statutory damages for willful infringement as of February 23, 2015.

f. Recommendation by Defendants to include acknowledged songwriters as referenced above to the National Academy of Recording Arts & Sciences (NARAS) and Society of European Stage Authors and Composers (SESAC) to acknowledge and honor Mark Halper with presentation of a Grammy and SESAC award as co-writer of the lyrics of "Stay With Me".

g. Public apology by all Defendants noted within Sony/ATV Music Publishing LLC et al to Mark Halper in the music trade magazines to include Billboard, Variety, and Hollywood Reporter.

*Id.* at 2-3.

Defendants filed the instant Motion and supporting materials arguing that Plaintiff's copyright infringement claim against them must be dismissed because: (1) Plaintiff does not allege any theory by which any of the Defendants had access to Plaintiff's song "Don't Throw Our Love Away"; and (2) Plaintiff has no copyright protection for the phrase "stay with me," since copyright protection does not extend to short phrases. Docket No. 25, p. 2, *citing Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999); *Pendleton v. Acuff-Rose Publications, Inc.*, 605 F. Supp. 477, 486 (M.D. Tenn. 1984). Defendants additionally argue that although Plaintiff identifies a number of people to whom he gave a demo recording of his song "Don't Throw Our

5

Love Away" in 1986, 1990, and 2013, Plaintiff does not allege that any of these individuals are among the named Defendants in this action or are otherwise associated with them, nor does he allege a "chain of events" which could tie the individuals to Defendants and demonstrate that Defendants would have received and heard Plaintiff's song. *Id.* at 3, 5. Defendants further argue that although Plaintiff alleges that Defendants may have "subconsciously" copied his work given the "widespread dissemination" of his demo recordings to the named individuals in 1986, 1990, and 2013, Plaintiff concedes that his song "was never published." *Id.* at 3, 6.

Plaintiff responds that Defendants had a reasonable opportunity to see or hear his work, and did in fact see or hear his work. Docket No. 28, p. 2. Plaintiff maintains that he "went to the two respective county courthouses and then looked up in the treasurer's office the official property registration with address and then on weekends drove out to the homes and personally presented the cassette demo and lyric sheet of "Don't Throw Our Love Away" to some of the most popular and respected record producers, publishers, and recording artists of that time period. Later on, with the advent of high speed electronic communication and messaging, Plaintiff used e-mail, scanned e-mail attachment, and YouTube video to disseminate his songs," including "Don't Throw Our Love Away." *Id.* at 1. Plaintiff further responds that he sent via e-mail and e-mail attachment "all relevant documentation" pertaining to "Don't Throw Our Love Away" to Defendants and that the February 23, 2015 e-mail from Jeff Smaar, VP Global Copyright Administration, Sony/ATV Music Publishing LLC, which stated, "Mr. Halper, We are in receipt of your letter dated February 12, 2015 and it is currently being evaluated," establishes that Defendants had access to his work. *Id.* at 2. Plaintiff continues:

> In this instance, there was clear access with the communication by

> Plaintiff to Sony/ATV Music Publishing LLC of the willful
> copyright infringement and the subsequent e-mail response from
> Jeff Smaar, VP Global Copyright Administration, Sony/ATV
> Music Publishing LLC dated February 23, 2015 acknowledging
> receipt of Plaintiff's letter dated February 12, 2015 which included
> a notice of willful copyright infringement and the lead sheet and
> lyrics of "Don't Throw Our Love Away". Moreover, presumed
> access must be allowed especially considering the preceding events
> months earlier to October 2014 when the same three co-writers
> Samuel Smith, James Napier, and William Phillips of "Stay With
> Me" and their publishers agreed in an out of court settlement with
> the writers (Jeff Lynne and Tom Petty) of "I Won't Back Down" to
> a subconscious use and replication of the music, chord
> progressions, and melody from "I Won't Back Down" with only
> the rhythm slowed down. Jeff Lynne and Tom Petty each were
> given songwriting credit to "Stay With Me" and each given 12.5%
> royalty rights. Then, only three months later, Plaintiff initiated
> communication with Sony/ATV Music Publishing, LLC in
> Nashville, TN alleging a willful copyright infringement for
> phraseology used and replicated in "Stay With Me."

*Id.* at 3.

As to copyright protection extending to phrases, Plaintiff responds, "the big question becomes how does Tim Warnock argue that the Plaintiff does not have protection of the dual phraseology 'stay with me' and 'lay with me' while the Defendants apparently have the copyright protection and entitlement to receive significant financial compensation for the same dual phraseology 'stay with me' and 'lay with me' earlier written by Plaintiff, and subsequently successfully copyrighted?" *Id.* at 2-3. Plaintiff argues that the reference to the dual phraseology "stay with me" and "lay with me" was made multiple times, and that it is this dual phraseology that should receive protection. *Id.* at 5. Plaintiff contends, "It is this dual phraseology that is so critical in this copyright infringement claim, because the use and replication of this dual phraseology 'stay with me' and 'lay with me' also appears as a promotional commercial appearing on the episode of the Voice on NBC showing an excerpt of the Sam Smith video "Stay

With Me" singing the dual phraseology 'stay with me' and 'lay with me' as a controversial promotion from Lightworkers Media (Mark Burnett and his wife Roma Downey) for their then upcoming lavish NBC mini-series production (which aired on NBC Easter Sunday 2015 and continued for 12 weeks[)]." *Id.* at 6. Plaintiff asserts:

> The standard for legal review is "substantially similar". We are not speaking "substantially similar". The protectable elements from "Don't Throw Our Love Away" include the phraseology/ significant phrase 'stay with me' and 'lay with me.' What is represented here is that the phraseology/significant phrase 'stay with me' and 'lay with me' as it appears in "Don't Throw Our Love Away" is exact and identical in theme, sentimental mood, and feeling, inflexion [*sic*] and tone as it appears in "Stay With Me". So much so, that Sam Smith could have inserted the first two lines of Plaintiff's "Don't Throw Our Love Away" into the end of "Stay With Me" and his hundreds of millions of fans would have believed that it was part of "Stay With Me". That speaks to the fundamental element of this case. Defendants have appropriated the fundamental essence and structure of Plaintiff's work, that being an emotional love song speaking to the essence of a relationship between two people who have been intimate (regardless of being between a man and woman or between two men, or two women).

*Id.*

Plaintiff additionally contends that he is entitled to recovery under the doctrine of Fair Use. *Id.* at 4, 7.

Defendants, in their Reply, maintain that "[n]one of Plaintiff's many arguments resolves Plaintiff's failure to allege access sufficiently or to allege infringement of protectable elements in his work, each of which is independently fatal to his claim of copyright infringement." Docket No. 29-1, p. 1. Defendants argue that Plaintiff's allegations of access fail to identify the number or names of any of the people to whom he purportedly gave his demo tape and fail to allege any

means by which his demo tape could have made its way decades later to either the writers of Sam Smith's Stay With Me or to Defendants themselves. *Id.* at 2. Defendants contend that Plaintiff has failed to allege that he ever gave a copy of his work to a record producer, publisher, or recording artist associated with the allegedly infringing work. *Id.* at 3. Defendants further contend that Plaintiff points to no elements of the allegedly infringing work beyond the phrases "stay with me" and "lay with me" that are present in his work. *Id.* Defendants reiterate their contention that those phrases are not protectable, and they maintain that even if those short phrased were protectable, the existence of two very short and commonplace phrases cannot establish a striking similarity between two otherwise very different musical compositions. *Id., citing Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003). Defendants assert that Plaintiff has also failed to address the fact that the phrases "stay with me" and "lay with me" exist in works that pre-date his work. *Id.* at 4, *referencing* the Copyright Office report reflecting that at least two works that include the phrases "stay with me" and "lay with me" were registered in 1980 and 1982, predating Plaintiff's 1986 alleged date of creation. Defendants maintain that Plaintiff was not the first person to use both phrases in the same song, so any alleged similarities would not be of protectable elements and could not sustain a claim for copyright infringement. *Id.* at 5.

Addressing Plaintiff's contention that the email from Jeff Smarr dated February 23, 2015 establishes access, Defendants note that February 23, 2015 is a date well *after* the alleged infringement would have begun, and they argue that no one can copy a work unless he had "access" to the work *before* he created the allegedly infringing work. *Id.* at 2, *citing King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 846 (M.D. Tenn. 2006). Defendants maintain that Mr. Smarr's email simply acknowledges receiving a February 12, 2015 letter from Plaintiff and

9

therefore does not establish that Defendants had a copy of Plaintiff's work prior to receipt of that February 12, 2015 letter. *Id.* at 3.

Addressing Plaintiff's contention that the number of views on the Sam Smith YouTube video of "Stay With Me" is evidence that can be used for evaluating this action, Defendants argue that Plaintiff fails to explain how the view count of a video informs an analysis of either access or protectability. *Id.* at 5. Turning to Plaintiff's invocation of the doctrine of fair use, Defendants note that the doctrine of fair use presents a possible defense to a claim of copyright infringement. *Id.*, *citing* 17 U.S.C. §107.

Plaintiff, in his Sur-Reply, responds that he "clearly provided and identified in the original pleading the names of all the record producers, publishers, and recording artists that he personally presented the demo cassette recording and lyrics to 'Don't Throw Our Love Away'" and that, in addition to the February 12, 2015 letter Plaintiff sent to Mr. Smaar, which Mr. Smaar acknowledged receiving, there was also email communication between Plaintiff and Martha Braithwaite, Senior Vice President of Business Affairs, Universal Music on February 24, 2015, which Ms. Braithwaite acknowledged receiving and to which she sent Plaintiff a response on behalf of Capital Music Group dated March 11, 2015, as well as communication between Plaintiff and Adam Clough, Managing Director of 365 artists and representing Stephen Fitzmaurice, the record producer for Sam Smith's "Stay With Me," to which Mr. Clough responded on March 17, 2015. Docket No. 44, p. 1-2.

Plaintiff further replies, "At issue here, is the subsequent promotional commercial presenting Sam Smith singing only the dual phraseology 'stay with me' and 'lay with me' under an exclusive licensing agreement with Mark Burnett and his wife Roma Downey of

10

Lightworker's Media which appeared as a commercial during the NBC program The Voice on March 30, 2015 to promote the then upcoming lavish NBC mini-series 'A.D. - The Bible Continues' which was set to air Easter Sunday, April 5, 2015 and continue for twelve consecutive Sunday evenings." *Id.* at 2. Plaintiff argues that "[t]his is most relevant" because the "significant success" of "Stay With Me" "has spawned the potential for a $100 million global marketing enterprise supporting the song 'Stay With Me' and the dual phraseology 'stay with me' and 'lay with me.'" *Id.*

As to the protectability of the dual phrases 'stay with me' and 'lay with me,' Plaintiff argues that they are "clearly not common words or a cliched language as argued," such that they are protectable. *Id.* at 3. Plaintiff maintains that the nearly 700,000 YouTube views "speaks to the ubiquitous response of the music listeners around the world to the dual phraseology 'stay with me' and 'lay with me.'" *Id.* Plaintiff asserts that Defendants stand to earn over $100,000,000 from the song while Plaintiff stands to earn $0 if he is not given co-songwriting credit and royalties. *Id.* Plaintiff additionally maintains that the fact that "Producer Mark Burnett and his wife, Roma Downey accomplished their desired objective - getting millions of viewer's attention and getting the 'buzz' going the following day," "speaks to the ubiquitous response to the song 'Stay With Me' and the tremendous financial and marketing potential associated with the dual phraseology 'stay with me' and 'lay with me.'" *Id.* at 4.

Plaintiff argues that he has proffered sufficient allegations to defeat Defendants' Motion to Dismiss, such that their Motion should be denied. *Id.* at 4-5.

For the reasons discussed below, the undersigned recommends that Defendants' Motion to Dismiss (Docket No. 25) be GRANTED, and that this action be DISMISSED.

## II. Facts Alleged in Re-Filed Complaint

Plaintiff wrote "Don't Throw Our Love Away" in April 1984. Docket No. 1, p. 2. Plaintiff recorded the first demo of "Don't Throw Our Love Away" in 1986, and recorded a second demo of "Don't Throw Our Love Away" in 2013; each demo featured a different arrangement sung by different female singer. *Id.* at 2, 6. "In between, there was also a demo sung by a male singer." *Id.* at 6.

In 1986, Plaintiff "widely disseminated" his demo to Garth Fundis, Don Lanier, Brent Maher, Paul Worley, Rich Alves, Tom Collins, Brian Rawlings, Lee Greenwood, Don Williams, Reba McEntire, Crystal Gayle, "Sylvia," Gary Morris, Barbara Mandrell, and Ronnie Milsap. *Id.* at 6. In 1990, Plaintiff "disseminated" his demo to Dolly Parton. *Id.* Plaintiff also sent the demo to Marvin Hamlisch "before he died." *Id.*

In 2013, Plaintiff "widely disseminated" his new demo to Emilio Estefan and Gloria Estefan "via referral from a mutual friend of Gladys Passes whose name was Julio." *Id.*

Plaintiff's song contains the phrases "stay with me" and "lay with me." *Id.*, *passim.* Sam Smith's "Stay With Me" uses the phrases "stay with me" and "lay with me" eight (8) times. *Id.* at 7, 8.

Plaintiff's song was never published. *Id.* at 7.

Plaintiff completed formal registration with the United States Copyright Office and obtained a Certificate of Registration, Registration Number Pau003785645, from the Register of Copyrights, with an effective date of registration of July 9, 2015, for his original song "Don't Throw Our Love Away." *Id.* at 2.

In February 2015, Plaintiff sent a letter to Mr. Jeff Smaar, VP Global Copyright

Administration, Sony /ATV Songs, LLC, at the designated office for Sony/ATV Music Publishing LLC, advising them of his copyright infringement claim. *Id.* at 8. On February 23, 2015, Mr. Smaar acknowledged receipt of Plaintiff's letter. *Id.*

Plaintiff thereafter filed his copyright infringement claim in federal court. *Id.*

### III. Law and Analysis

**A. Motion to Dismiss - Fed. R. Civ. P. 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

13

> Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. at 678-79 (citations omitted).

## B.  Copyright Infringement

In order to establish copyright infringement, a plaintiff must prove two elements: (1) that it owns valid copyrights in the infringing composition(s); and (2) that the defendant copied original elements of the composition(s) without authorization. *Feist Publications, Inc., v. Rural Tel. Ser. Co.,* 499 U.S. 340, 361; *King Records Inc. v. Bennett*, 438 F. Supp. 2 812, 837 (M.D. Tenn. 2006).

As noted, after proving ownership, a plaintiff must establish that the defendant copied plaintiff's copyrighted work. *Kohus v. Mariol,* 328 F.3d 848, 853 (6th Cir. 2003). In most cases, there is no direct evidence of copying. Accordingly, courts must rely on inferences drawn from (1) a defendant's *access* to the allegedly infringed work; and (2) the *substantial similarity* between defendant's work and the allegedly infringed work. *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.,* 361 F.3d 312, 316 (6th Cir. 2004). If a plaintiff is able to establish the inference of copying, a defendant may rebut such an inference with proof of

14

independent creation of the allegedly infringing work. *Ellis v. Diffie,* 177 F.3d 503, 507 (6th Cir. 1999).

Access is proven when a plaintiff shows that the defendant saw or had a reasonable opportunity to see plaintiff's work, and therefore had the opportunity to copy. *Id.* at 506. "Access may not be inferred through mere speculation or conjecture. There must be a reasonable possibility of viewing the plaintiff's work—not a bare possibility." 4 *Nimmer on Copyright,* §13.02[A], at 13–21; *see also Ellis,* 177 F.3d at 506. An assertion of access must be supported by probative evidence. *Murray Hill,* 361 F.3d at 316. Where there is no direct evidence of access, such as when the defendant denies having seen the allegedly infringed work, circumstantial evidence may be used to demonstrate reasonable access. Two forms of circumstantial evidence are accepted as evidence of reasonable access: (1) a particular chain of events establishing defendant's access to plaintiff's work, or (2) plaintiff's work has been widely disseminated. *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 846 (M.D. Tenn. 2006) (internal citations omitted).

Where access cannot be proved through *either* direct or circumstantial evidence, the plaintiff must show a *striking* similarity between the allegedly infringed work and defendant's work, rather than the lower *substantially* similar standard. *Murray Hill,* 361 F.3d at 317. If the plaintiff is able to prove striking similarity, additional proof of access is not required. *King Records, Inc.*, 438 F. Supp. 2 at 846. This is because "striking similarity carries the burdens of proof that the infringing work is sufficient[ly] similar as to intrude into the copyrighted work's protection *and* that the defendant must have had access to the copyrighted work, even if the plaintiff can provide no extrinsic proof of that fact." *Id.* (emphasis in original).

15

**C. The Case At Bar**

As discussed above, in order for Plaintiff to establish copyright infringement, Plaintiff must first prove that he owns valid copyrights in the infringing composition. *Feist Publications, Inc.,* 499 U.S. at 361; *King Records Inc.*, 438 F. Supp. 2 at 837. Plaintiff acknowledges that although he wrote "Don't Throw Our Love Away" in 1984, he did not copyright it until 2015, *after* Sam Smith's "Stay With Me" had been released. *See* Docket No. 1. Because Plaintiff did not have a copyright on "Don't Throw Our Love Away" when "Stay With Me" was released, "Stay With Me" cannot be said to have infringed on Plaintiff's copyright. For this reason alone Defendants' Motion should be granted.

Even if Plaintiff had copyrighted "Don't Throw Our Love Away" in 1984, however, the fact that Plaintiff gave his demo to Garth Fundis, Don Lanier, Brent Maher, Paul Worley, Rich Alves, Tom Collins, Brian Rawlings, Lee Greenwood, Don Williams, Reba McEntire, Crystal Gayle, "Sylvia," Gary Morris, Barbara Mandrell, and Ronnie Milsap in 1986, Dolly Parton in 1990, Marvin Hamlisch "before he died," and Emilio Estefan and Gloria Estefan "via referral from a mutual friend of Gladys Passes whose name was Julio" in 2013, dissemination to these few people does not establish that Plaintiff "widely disseminated" his work. *Id.* at 6. Moreover, Plaintiff has not alleged facts connecting any of these people with Defendants, nor has Plaintiff alleged facts establishing any chain of events whereby "Don't Throw Our Love Away" would have made its way throughout the years from the possession of these individuals to Defendants. Plaintiff cannot establish that Defendants had access to his work, and Defendants' Motion should be granted.

Furthermore, Plaintiff concedes that "Don't Throw Our Love Away" was never

published. *Id.* at 7. It is also noteworthy that the 2015 communication that Plaintiff avers establishes that Defendants had knowledge of, and access to, "Don't Throw Our Love Away" occurred *after* "Stay With Me" had been released and *before* Plaintiff had copyrighted "Don't Throw Our Love Away." *See* Docket No. 1. Accordingly, these 2015 communications cannot establish either knowledge or access, and Defendants' Motion should be granted.

Finally, other than both songs containing the phrases "stay with me" and "lay with me," Plaintiff has failed to allege that "Don't Throw Our Love Away" and "Stay With Me" are either substantially similar or strikingly similar in composition or melody. Absent sufficient similarity, Plaintiff cannot establish copyright infringement, and Defendants' Motion should be granted.

## IV. Conclusion

For the reasons discussed above, the undersigned recommends that Defendants' Motion to Dismiss (Docket No. 25) be GRANTED, and that this action be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
JEFFERY S. FRENSLEY
United States Magistrate Judge